HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARTIS SPECIALTY INSURANCE
COMPANY,

            Plaintiff,

    v.

QUEEN ANNE HS, LLC,

            Defendant.

NO. C11-335RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion (Dkt. # 99) of Plaintiff Chartis Specialty Insurance Company ("Chartis") to vacate the court's April 4, 2012 order on the parties' summary judgment motions.  For the reasons stated below, the court DENIES the motion and directs the clerk to TERMINATE this case in light of the parties' settlement.

## II.  BACKGROUND

The April 4 order was the court's last substantive ruling in this sharply contested dispute between Chartis and Queen Anne HS, LLC ("Queen Anne"), the construction company who converted the apartment complex that was once Seattle's Queen Anne High School into condominiums.  The condominium homeowners' association sued Queen Anne for a host of construct defects.  Chartis and Queen Anne became embroiled in a dispute over whether Chartis, Queen Anne's excess insurer, was obligated to defend

ORDER – 1

or indemnify Queen Anne.  In July 2011, the court ruled that the Chartis's obligations would arise, if at all, only after Queen Anne paid $1 million in a judgment or settlement, not after Queen Anne paid $1 million in defense costs.  Queen Anne and the association then entered a $1 million partial settlement of the construction litigation.  Queen Anne gave the association a $1 million promissory note, securing the note with Queen Anne's interest in a lawsuit against its insurance broker.  Chartis denied that the partial settlement could trigger its duty to defend or indemnify.  That denial ripened into the cross-motions for summary judgment that the court resolved in the April 4 order.

The April 4 order interpreted Chartis's insurance policy and concluded that Queen Anne's partial settlement triggered Chartis's duty to defend.  The court also ruled that Chartis acted in bad faith as a matter of law by not appointing defense counsel beginning on August 24, 2011, the execution date of the partial settlement.  The court noted that Chartis had appointed "associate" counsel in the construction lawsuit, but had never agreed that associate counsel would assume Queen Anne's defense.  At the same time, the court observed that there were "many factual disputes over whether [associate counsel] actually intended to defend [Queen Anne] at trial, whether he acted on Queen Anne's behalf or Chartis's, and whether Queen Anne could rely on him to provide a vigorous defense through trial."  April 4 ord. at 4.  The court also explained that there were "factual disputes over whether the associate counsel that Chartis provided ameliorated the impact of its wrongful refusal to defend," as well as "disputes over associate counsel's role in the settlement process."  April 4 ord. at 17-18.

Chartis moved to reconsider the April 4 order, but the parties settled this case before Queen Anne responded to the motion.  The parties notified the court orally of their settlement on May 24.  By June 11, they filed a joint status report confirming the settlement and informing the court that they had "stipulate[d] to the Court's vacating the [April 4] Order."  Dkt. # 97.  On June 15, the court explained that it would not vacate the

ORDER – 2

1   April 4 order based on the parties' "bare request," but that it would entertain a motion to

2   vacate the order. Dkt. # 98. Chartis's motion to vacate followed. Queen Anne did not

3   join the motion, but filed a two-sentence stipulation to vacate the order, noting that it had

4   agreed in the settlement to do so. In their most recent joint status report, the parties

5   confirmed that they had "fully executed" their settlement. Dkt. # 102.

### III.   ANALYSIS

7        The court has discretion to vacate the April 4 order. *Michelman v. Lincoln Nat'l*

8   *Life Ins. Co.*, 685 F.3d 887, 892 (9th Cir. 2012) (reviewing "district court's refusal to

9   reconsider or vacate summary judgment" for abuse of discretion); *see also Wagoner v.*

10  *Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991) (noting "district court's general

11  discretionary authority to review and revise interlocutory rulings prior to entry of final

12  judgment"). The April 4 order is interlocutory, because it resulted in no judgment for

13  either party. Rule 54(b) of the Federal Rules of Civil Procedure gives the court the power

14  to "revise[]" such an order "at any time before the entry of a judgment adjudicating all

15  the claims and all the parties' rights and liabilities." The Ninth Circuit has not squarely

16  addressed what constraints, if any, apply to a district court considering whether to vacate

17  its own orders. It has, however, explained that a district court considering a Rule 60(b)

18  motion to vacate its own *judgment* can engage in broad equitable balancing. *Am. Games,*

19  *Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1169 (9th Cir. 1998); *see also Zimores v.*

20  *Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985) ("The standard for reviewing

21  vacation of an interlocutory order is hence not whether the stringent Rule 60(b) standard

22  is met, but is rather whether the district court abused its discretion."); *Persistence*

23  *Software, Inc. v. Object People, Inc.*, 200 F.R.D. 626, 627 (N.D. Cal. 2001) ("The

24  standard for granting a motion to vacate under Rule 54(b) is less rigid than that under

25  Rule 60(b) governing vacation of final judgments."). Despite that broad discretion,

26  courts may take guidance from the standards governing the court's decision on a Rule

ORDER – 3

60(b) motion to vacate a judgment.  *See*, *e.g.*, *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, No. CV 09-1531-PHX-JAT, 2012 U.S. Dist. LEXIS 69055, at *7-8 (D. Ari. May 17, 2012) (considering motion to vacate interlocutory order "as an exercise of its equitable discretion by considering the concerns articulated by [*United States Bancorp Mort. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994)], despite the fact that *Bancorp* does not establish a binding standard in these circumstances") (citation omitted).

In balancing the equities, the court begins with Chartis's argument that the April 4 order is erroneous in at least one respect.  Its motion for reconsideration claimed that the court erred by finding bad faith as a matter of law in its refusal to appoint defense counsel following Queen Anne's partial settlement.  Chartis's contention is that the "associate counsel" it had already appointed was no different than the defense counsel it was obligated to provide Queen Anne.  The court disagrees, for the reasons stated in the April 4 order.  But, as the court acknowledged, there were unresolved factual disputes over what role associate counsel played, and that the resolution of those factual disputes at trial or otherwise might ameliorate the impact of Chartis's failure to name defense counsel.  In other words, although Chartis undisputedly (in the court's view) violated its duty to defend by not designating defense counsel following the partial settlement, it is possible that Queen Anne suffered little or no damage as a result, depending on the extent to which associate counsel filled the role of defense counsel.  But by refusing to accept its duty to defend and clarify that associate counsel (or someone else) would fill the role of defense counsel, Chartis acted in bad faith as a matter of law.  Chartis's decision to settle the case meant that the court never addressed its motion for reconsideration, but that motion was unlikely to succeed.  Even if the order contains an error, it binds no one, not even Chartis.  It is possible that another litigant might cite it in a future attempt to persuade another court to take the same position.  But that future court is not bound by this court's decision.  Indeed, it is just as likely that this court's decision would help

ORDER – 4

another judge reach a contrary decision.  The court finds that the alleged error in the April 4 order weighs only slightly, if at all, in favor of vacating that order.  This is particularly so where the bulk of the order was devoted to interpreting the Chartis insurance policy, not to analyzing the role of associate counsel.

In balancing the equities, the court considers the public interest, not merely the interests of the parties before it.  Only Chartis has an interest in vacating the April 4 order, whereas the public has an interest in it as persuasive authority.  Court orders "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *Bonner Mall*, 513 U.S. at 26 (citation omitted).  Because "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole," *id.*, vacating them in the service of a single litigant is inadvisable.

The court invested considerable resources into interpreting Chartis's policy. Chartis suggests that unlike, for example, a claim construction order in a patent case, this case did not strain the court's resources.  The court assures Chartis that it is mistaken. Few cases on the court's docket have demanded more attention than this one.  The court's resources are the public's resources, and vacating an interlocutory order in the wake of a settlement deprives the public of whatever benefit inures from that investment.  *See*, *e.g.*, *Tumulty v. FedEx Ground Package Sys., Inc.*, No. C04-1425P, 2007 U.S. Dist. LEXIS 20429 (W.D. Wash. Mar. 22, 2007) (declining to impliedly undo decision reached after intensive litigation by vacating judgment); *Zinus, Inc. v. Simmons Bedding Co.*, No. C 07-3012 PVT, 2008 U.S. Dist. LEXIS 33359, at *3-6 (N. D. Cal. Apr. 23, 2008) (declining to vacate claim construction order).  As the *Zinus* court bluntly put it:

> The public paid for this use of court resources through its tax dollars. Vacatur would render that expenditure a waste, and the parties cite no public interest that would be served by vacatur which would justify the waste of public funds.

*Id.* at *6.

ORDER – 5

1   Chartis's motion arises in not-at-all-unusual circumstances: after extensive

2   litigation and an adverse decision, a litigant decides to settle a case rather than proceed to

3   trial.  If anyone stands to gain from the vacatur of the April 4 order, it is Chartis.  The

4   court notes that whereas Chartis hopes to vacate the April 4 order, it has not mentioned

5   the court's July 27, 2011 order.  That order also interpreted Chartis's insurance policy,

6   but in that order, the court's interpretation favored Chartis.  The court does not fault

7   Chartis for pursuing its interests, but the court considers the public interest when deciding

8   whether to vacate an order.  The court doubts that it serves the public interest to

9   selectively vacate decisions adverse to one litigant.

10   Whether the court vacates the April 4 or not, it remains in the public record, and

11   has as much persuasive effect as any court or party wishes to accord it.  Vacatur does not

12   make an order disappear.  *See Cisco Sys., Inc. v. Telecordia Techs., Inc.*, 590 F. Supp. 2d

13   828, 831 (E.D. Tex. 2008) ("[The order] is now on the internet, available to anyone with

14   a computer.").  The court's order is already available to all subscribers to the Westlaw

15   and Lexis legal research services.  *See* 2012 U.S. Dist. LEXIS 47887; __ F. Supp. 2d __,

16   2012 WL 1133186.  The Westlaw citation suggests that the decision has been or will

17   soon be reported in the Federal Supplement.  Vacating an order does not eliminate it from

18   the public record.  Because it is in the public record, and because it is not binding,

19   vacating the order would have no practical effect.

20   Finally, the court's declining to vacate the April 4 order will not discourage

21   settlement.  It will not discourage settlement in this case because the parties have already

22   executed a settlement that does not depend on the fate of the April 4 order.  As to other

23   litigants (including Chartis in future cases), a liberal policy of vacatur does not favor

24   settlement.  It instead encourages parties with deep pockets to litigate with impunity,

25   knowing that they can eliminate adverse decisions with a settlement and a motion to

26   vacate.

27
28   ORDER – 6

**IV.  CONCLUSION**

For all of these reasons, the court DENIES Chartis's motion to vacate the April 4 order.  Dkt. # 99.  The court directs the clerk to TERMINATE this civil action in light of the parties' settlement.

DATED this 31st day of August, 2012.

_____

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7